# Schedule of Exhibits:

*Detailed Schedule of Exhibits:*

## EXHIBITS – G

1. PRIVATE LAW 114-31-DEC. 3, 2016 PASSED BY CONGRESS (14 pages ); and

**15 pages total including this Schedule of Exhibits**



EXHIBIT - G

PRIVATE LAW 114–31—DEC. 3, 2016

# JUSTICE RELIEF FOR BRADLEY CHRISTOPHER STARK, SHAWN MICHAEL RIDEOUT, AND CERTAIN NAMED BEFECIARIES ACT

EXHIBIT - G

# Private Law 114-31
## 114th Congress

## An Act

For the Relief of Bradley Christopher Stark, Shawn Michael Rideout, and Certain Named Beneficiaries

Dec. 3, 2016

[S. 112]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.*

Justice Relief for Bradley Christopher Stark, Shawn Michael Rideout, and Certain Named Beneficiaries.

### SECTION 1. DEFINITIONS.

(a) **Definitions.** For the purposes of this Act—
    (1) The term "Agreement" means—
        (A) the Stipulation and Settlement Agreement of May 22, 2015;
        (B) the Addendum to the Agreement dated August 7, 2015;
        (C) the Addendum to the Agreement dated October 8, 2016; and
        (D) the Addendum to the Agreement dated December 21, 2015, between Bradley Christopher Stark; Shawn Michael Rideout; and the United States of America.

    (2) The term "Attorney General" means the office of the Attorney General of the United States.

    (3) The terms "Award," "Interim Awards," and "Final Award" mean, with respect to the Agreement, the final binding and non-appealable decisions and remedies of the arbitrator awarded pursuant to the Agreement.

    (4) The term "Beneficiaries" means any one of the following beneficiaries either individually or in any combination thereof or both-
        (A) Jason Carl Thomas;
            (i) Karen Andrea Burke-Haynes;
            (ii) Janice Laurore;
            (iii) Carlo Laurore;
            (iv) Sharon Burke;
            (v) Peter Burke;
            (vi) Kisha Nicole Thomas;
        (B) Demetriues Jermaine Hawkins;
        (C) Katrina Glenn Hawkins;
        (D) Balldev Naidu Ragavan;
        (E) Hendrick Ezell Tunstall;
        (F) Charles Elliot Hill, II;
        (G) William Scott Hames;
        (H) John Scot Snuggs;
            (i) Nichola Dawn (Rose) Snuggs;
            (ii) Timothy J. Snuggs;
            (iii) Melissa M. Snuggs;
            (iv) Elizabeth R. Snuggs;
            (v) Robert D. Snuggs;
        (I) Charles David Johnson, Jr.;
            (i) Jeremy Johnson;
            (ii) Scott Johnson;
            (iii) Jonathan Fultz;
            (iv) Jessica Reynolds-Toms;
            (v) Herbert Walker;
        (J) Bryan Samuel Coffman;

        (i) Megan A. Coffman;
        (ii) Daniel P. Coffman;
        (iii) Corbin A. Coffman;
        (iv) Tabitha C. Coffman;
        (v) Erin Jacobs;
    (K) Meagan Eleanor (Russell) Kemp;
        (i) Eleanor Joye Kemp;
        (ii) Patrick Sebastian Kemp;
    (L) Lulummba Clay Travis;
    (M) Michael Tsalickis;
    (N) William Michael Cain;
    (O) Jerry Garwood Mitchell;
    (P) Shane Reed Wilson;
    (Q) Jason Wesley Tate;
    (R) Viola Cheney;
    (S) Madison Elizabeth (Stark) Liebel;
    (T) Barbara Jean Stark;
    (U) John William Stark, Jr.;
    (V) Jeffrey Marc Schonsky;
    (W) Nino Spagnuolo;
    (X) Dominik Maier;
    (Y) Curtis Colwell;
    (Z) Douglas Colwell;
    (AA) Kathleen DeWeese;
    (BB) Daniel DeWeese;
    (CC) Richard Rideout;
    (DD) Brian Rideout; and
    (EE) Nicole Rideout.

(5) The term "Corporate Beneficiaries" means any one of the following beneficiaries individually or in any combination thereof or both-

    (A) JPMorgan Chase Bank, N.A.;
    (B) Morgan Stanley;
    (C) Royal Bank of Scotland;
    (D) CreditSuisse;
    (E) Bank of America, N.A.;
    (F) Wells Fargo;
    (G) Citigroup/Citibank, N.A.;
    (H) HSBC;
    (I) Barclays, PLC;
    (J) Goldman Sachs;
    (K) BNP Paribas;
    (L) Deutsche Bank, AG;
    (M) Union Bank of Switzerland (UBS)
    (N) British Petroleum;
    (O) Transocean;
    (P) GlaxoSmithKline; and
    (Q) VolksWagon.

(6) The term "FAA" means the Federal Arbitration Act as described in title 9 of the United States Code [9 U.S.C. 1-16].

(7) The term "immediate family" shall mean the living natural mother or father, or both; or the adoptive mother or father, or both; the natural maternal grandmother or grandfather, or both; the natural paternal grandmother or grandfather, or both; any natural, half, step, or adopted brothers or sisters, or both; spouses; all natural and legally adopted children; and all natural and legally adopted grandchildren of the parties and the beneficiaries that are natural persons named in this Act; except

that the term "immediate family" shall not apply to the maternal or paternal grandparents of any adoptive parents of the parties or beneficiaries that are natural persons named in this Act.

(8) The term "parties" means either of the following parties of the first part of the Agreement either individually or in conjunction with one another or both-

    (A) Bradley Christopher Stark; and

    (B) Shawn Michael Rideout.

(9)    The term "person" shall mean any individual, partnership, association, joint stock company, trust, or corporation named in this Act, including any immediate family member or relevant employee to which this Act relates and may affect, except that the term "natural person" shall only refer to any living human being that is a party, beneficiary, or immediate family member as described in this Act and shall not mean any partnership, association, joint stock company, trust, or corporation.

(10) The term "records" shall mean all records, system of records, library catalogs, lists, files, optical, electronic and physically stored information that relates to the named parties and beneficiaries in this Act.

(11) The term "Trust" as used in this Act means the Superfund and any designated Justice Relief Fund or account established by section 6 of this Act.

(12) The term "United States" as used in this Act means-

    (A) the United States of America;

    (B) the government of the United States, or

    (C) in the geographic sense, all fifty States, Territories, and Possessions of the United States.

The United States of America is the party of the second part of the Agreement.

## SECTION 2. FINDINGS OF CONGRESS.

(a) The Congress finds the following:

    (1) That the United States by and through the Attorney General entered into an Agreement with the Parties.

    (2) The Agreement is a valid and binding settlement agreement between the Parties and the United States that operates in the nature of a release-dismissal agreement.

    (3) The Agreement contained an alternative dispute resolution clause that provided for arbitration as the exclusive remedy for relief to the Parties and the United States.

    (4) The United States consented to the arbitration and the awards made thereunder for the equitable relief of the Parties and the United States are binding.

    (5) Congress hereby expressly waives any defenses to the equitable relief awarded to the Parties, Beneficiaries, and Corporate Beneficiaries by the arbitrator.

    (6) The parties, beneficiaries and their immediate family members, and the corporate beneficiaries are entitled to the relief established by the Agreement, the Awards, and the provisions of this Act notwithstanding any other law to the contrary. *Provided that,* Joey Brandon Kemp shall not be entitled to any relief or benefits established by the Agreement, the Awards, and this Act.

## SECTION 3. PURPOSE.

EXHIBIT - G

(a) The purpose of this Act is to provide the effective relief and enforcement of the obligation of promises, terms, and conditions of the Agreement between the parties and the United States of America.

### SECTION 4. AFFIRMATIVE RELIEF.

(a) All parties and beneficiaries that are natural persons and their immediate family that are confined in any jail, prison, penal institution, correctional institution, or any other form of official or unofficial detention under the authority of any State, Territory, Possession, or Federal Agency of the United States, shall be unconditionally released from any such detention and set at liberty immediately and without further delay.

(b) All pending legal actions and adjudicated cases by the United States of America, any State, Territory, or Possession of the United States against the parties, beneficiaries, and their immediate family whether criminal, civil, administrative, sounding in tort, or otherwise, are vacated and dismissed with prejudice, being void ab initio and are of no further force and effect as of the date of this Act and retroactively applied to the day preceding the initial filing of any such suit or action.

(c) All real and personal property, and funds that were seized, forfeited, or taken by legal process or otherwise, by the United States of America, any State, Territory, or Possession of the United States is to be immediately returned to the appropriate parties, beneficiaries, and immediate family members to which the property relates, including, but in no way limited to the property specifically named in the Agreement and Awards. Any property that is not able to be returned in as close to its original form shall be redressed by compensation in an amount of money to the party, beneficiary, or immediate family member that is equal to the highest reasonable value of said property; and specifically, but not in any way limited to-

> (1) Charles Elliott Hill, II, shall have the right to select 1500 acres of land from the Chattahoochee National Forest as compensation for the loss of his prime riverfront estates, farm, and real property with fixtures;
> (2) Brian Samuel Coffman, shall be compensated in the amount of $13,987,000 payable from the accounts of the Department of Justice by the Secretary of the Treasury for the seizure of his financial accounts, automobiles, and vessel;
> (3) John Scot Snuggs, shall be compensated in the amount of $11,321 payable from the accounts of the Department of Justice by the Secretary of the Treasury for the seizure of monetary instruments;

(d) All records and system of records in the possession of the United States of America, any State, Territory, or Possession of the United States that relate to or name the parties, beneficiaries that are natural persons, and their immediate family shall be expunged and destroyed; and from the date of this Act, no such records or system of records shall be maintained on any individuals named in this Act without the permission by the express voluntary signature after full disclosure and notice of the contents and purpose of said record or system of records being provided to the individual to whom the record relates.

(e) The parties and beneficiaries that are natural persons shall have the absolute right to the issuance of a land patent by the United States with title held in fee simply absolute in possession for any real property purchased, ceded, or quitclaimed so as to transfer ownership and title to any party or beneficiary to which this subsection relates.

(f) The United States Patent Office shall issue a full process patent to Charles Elliott Hill, II, for the "Red Muds Environmental Cleanup Process" having been formerly issued the provisional patent number 112956 U.S. PTO 60/919621.

EXHIBIT - G

(g) The Secretary of the Treasury is authorized to credit the sum of $1,000,000 to the appropriate trust funds established by this Act for the benefit of the parties and beneficiaries named in accordance with the terms of the Agreement and Awards.

## SECTION 5. PROHIBITORY RELIEF.

(a) The parties and beneficiaries that are natural persons, along with their immediate family, are extended absolute immunity from all criminal, civil, and administrative laws of the United States of America, any State, Territory, or Possession of the United States, and no court or tribunal of the United States shall have authority to exercise jurisdiction over the prosecution or litigation against the parties and beneficiaries, along with their immediate family, for offenses and violations of said laws; provided, that such immunity shall be subject to the remedial conditions established by this Act.

(b) The United States shall not prosecute a criminal or civil offense against any beneficiary named herein that is not a natural person for any violations or offenses against the laws of the United States that were committed prior to the date of this Act.

## SECTION 6. TRUST FUNDS AND MONETARY RELIEF.

(a) CREATION OF TRUST FUND. There is established in the Treasury of the United States a trust fund to be known as the 'Justice Relief Superfund' (hereinafter in this section referred to as the 'Superfund'), consisting of such amounts as may be-

    (1) appropriated to the Superfund as provided in this section,

    (2) appropriated to the Superfund pursuant to section 7(c) of this Act, or

    (3) credited to the Superfund as provided in section 2.

(b) TRANSFERS TO SUPERFUND. There are hereby appropriated to the Superfund amounts equivalent to-

> (1) the total monetary relief calculated and established in the Agreement received by the Department of Justice in the accounts from monetary penalties, asset forfeitures, seizures, and settlements during the fiscal year period beginning October 1, 2008 and ending through October 1, 2016,
>
> (2) all attributable moneys recovered from the corporate beneficiaries pursuant to section 7(b) of this Act, and
>
> (3) all moneys gifted by the Bradley Christopher Stark Justice Relief Fund for the benefit of the States and Congressional Districts within the States as set forth in this section.

(c) EXPENDITURES FROM SUPERFUND.

> (1) IN GENERAL. Amounts in the Superfund shall be available, as provided in this section, only for the purposes of making expenditures-
>
>> (A) to carry out the purposes of-
>>
>>> (i) funding the individual trust funds established under this section for the benefit of the parties, beneficiaries, and immediate family members of the Agreement as defined in this Act,
>>>
>>> (ii) funding community and public works projects in all 50 States and the individual electoral districts therein as set forth in this section, and
>>>
>>> (iii) funding the Presidential Library of the incumbent President signing this Act into law, or
>>
>> (B) hereafter authorized by law which does not authorize the expenditure out of the Superfund for a general purpose not covered by subparagraph (A) (as so in effect).

(d) LIABILITY OF THE UNITED STATES LIMITED TO AMOUNT IN TRUST FUND.

EXHIBIT - G

(1) GENERAL RULE. Any claim filed against the Superfund may be paid only out of the Superfund.

(2) COORDINATION WITH OTHER PROVISIONS. Nothing in this Act (or in any amendment made by later Acts) shall authorize the payment by the United States Government of any amount with respect to any such claim out of any source other than the Superfund.

(3) ORDER IN WHICH UNPAID CLAIMS ARE TO BE PAID. If at any time the Superfund has insufficient funds to pay all the claims payable out of the Superfund as such time, such claims shall, to the extent permitted under paragraph (1), be paid in full in the order in which they were finally determined.

(e) CREATION OF SUB-TRUST FUNDS. There is established in the Treasury of the United States certain sub-trust funds under the Superfund to be known as-

(1) Bradley Christopher Stark Justice Relief Fund.
    (A) Barbara Jean Stark Justice Relief Fund.
    (B) John William Stark Justice Relief Fund.
    (C) Madison Elizabeth Stark Justice Relief Fund.
    (D) Jeffrey Marc Schonsky Justice Relief Fund.
    (E) Nino Spagnuolo Justice Relief Fund.
    (F) Dominik Maier Justice Relief Fund.
(2) Shawn Michael Rideout Justice Relief Fund.
    (A) Kathleen DeWeese Justice Relief Fund.
    (B) Daniel DeWeese Justice Relief Fund.
    (C) Richard Rideout Justice Relief Fund.
    (D) Brian Rideout Justice Relief Fund.
    (E) Nicole Rideout Justice Relief Fund.
(3) Jason Carl Thomas Justice Relief Fund.
    (A) Karen Andrea Burke-Haynes Justice Relief Fund.
    (B) Janice Laurore Justice Relief Fund.
    (C) Carlo Laurore Justice Relief Fund.
    (D) Sharon Burke Justice Relief Fund.
    (E) Peter Burke Justice Relief Fund.
    (F) Kisha Nicole Thomas Justice Relief Fund.
(4) Demetriues Jermaine Hawkins Justice Relief Fund.
(5) Katrina Glenn Hawkins Justice Relief Fund.
(6) Balldev Naidu Ragavan Justice Relief Fund.
(7) Hendrick Ezell Tunstall Justice Relief Fund.
(8) Charles Elliot Hill, II Justice Relief Fund.
(9) William Scott Hames Justice Relief Fund.
(10) John Scot Snuggs Justice Relief Fund.
    (A) Nichola Dawn (Rose) Snuggs Justice Relief Fund.
    (B) Timothy J. Snuggs Justice Relief Fund.
    (C) Melissa M. Snuggs Justice Relief Fund.
    (D) Elizabeth R. Snuggs Justice Relief Fund.
    (E) Robert D. Snuggs Justice Relief Fund.
(11) Charles David Johnson, Jr. Justice Relief Fund.
    (A) Jeremy Johnson Justice Relief Fund.
    (B) Scott Johnson Justice Relief Fund.
    (C) Jonathan Fultz Justice Relief Fund.
    (D) Jessica Reynolds-Toms Justice Relief Fund.
    (E) Herbert Walker Justice Relief Fund.
(12) Bryan Samuel Coffman Justice Relief Fund.
    (A) Megan A. Coffman Justice Relief Fund.
    (B) Daniel P. Coffman Justice Relief Fund.
    (C) Corbin A. Coffman Justice Relief Fund.
    (D) Tabitha C. Coffman Justice Relief Fund.

EXHIBIT - G

        (E) Erin Jacobs Justice Relief Fund.
    (13) Meagan Eleanor (Russell) Kemp Justice Relief Fund.
        (A) Eleanor Joye Kemp Justice Relief Fund.
        (B) Patrick Sebastian Kemp Justice Relief Fund.
    (14) Lulummba Clay Travis Justice Relief Fund.
    (15) Michael Tsalickis Justice Relief Fund.
    (16) William Michael Cain Justice Relief Fund.
    (17) Jerry Garwood Mitchell Justice Relief Fund.
    (18) Shane Reed Wilson Justice Relief Fund.
    (19) Jason Wesley Tate Justice Relief Fund.
    (20) Viola Cheney Justice Relief Fund.
    (21) Curtis Colwell Justice Relief Fund.
    (22) Douglas Colwell Justice Relief Fund.
    (23) Community Projects and Public Works Fund of the United States Senate.
    (24) Congressional Districts Community Projects and Public Works Fund of the United States House of Representatives.

Said sub-trust funds shall consist of such amounts as may be appropriated or credited to such sub-trust fund as provided in this section or in the Agreement.

(f) TRANSFERS TO SUB-TRUST FUNDS. There are hereby appropriated from the Superfund amounts equivalent to-

    (1) on the date this enactment takes effect, $1,000,000, per sub-trust fund and account listed under subsection 5(e)(1)--(22),

    (2) one month after the date this enactment takes effect-

        (A) 4,811,478,257, for the Bradley Christopher Stark Justice Relief Fund,

            (i) $200,000,000, shall be set off from the Bradley Christopher Stark Justice Relief Fund and credited to the Community Projects and Public Works Fund of the United States Senate established by this section. Each United States Senator shall be allocated $2,000,000, per Senator for the purposes of community and public works projects within Senator's respective States,

            (ii) $870,000,000, shall be set off from the Bradley Christopher Stark Justice Relief Fund and credited to the Congressional Districts Community Projects and Public Works Fund of the United States House of Representatives established by this section. Each United States Representative shall be allocated $2,000,000, per Representative for the purposes of community and public works projects within their respective State Congressional Districts,

        (B) $813,913,043, for the Shawn Michael Rideout Justice Relief Fund,

        (C) $7,999,826,080, for the Jason Carl Thomas Justice Relief Fund,

        (D) $6,298,434,777, for the Demetriues Jermaine Hawkins Justice Relief Fund,

        (E) $812,347,826, for the Bryan Samuel Coffman Justice Relief Fund,

        (F) $812,347,826, for the John Scot Snuggs Justice Relief Fund,

        (G) $812,347,826, for the Charles David Johnson, Jr. Justice Relief Fund,

        (H) $812,347,826, for the Lulummba Clay Travis Justice Relief Fund,

EXHIBIT - G

(I) $14,291,457,392, for the Charles Elliott Hill, II Justice Relief Fund,

(J) $20,347,827, for the William Scott Hames Justice Relief Fund, and

(K) $17,120,000, for the Michael Tsalickis Justice Relief Fund.

(3) Amounts that are analogous to the funds named in subsection (e) of this section and are received by the United States Government as trustee shall be deposited in the Superfund for credit to the appropriate sub-trust fund or account in the Treasury. *Except* as provided in subsection (j), amounts accruing to these funds are appropriated to be disbursed in compliance with the terms of the trust.

(g) EXPENDITURES.

(1) IN GENERAL. The amounts in the Superfund and sub-trust funds shall be available for the purposes of making expenditures or transfers as directed by the beneficiaries of the named sub-trust funds to the Managing Trustee and Trustees as appropriate.

(2) RECORDS. Notwithstanding any other provision of this Act, the Managing Trustee shall keep a transactional record of expenditures, appropriations, and credits of the Superfund and sub-trust funds for the purposes of accurate accounting and shall further close the appropriate sub-trust funds or Superfund once all amounts are exhausted and no further appropriations or credits are pending.

(h) MANAGEMENT OF TRUST FUNDS.

(1) REPORT. It shall be the duty of the Secretary of the Treasury to hold the Superfund and each sub-trust fund established under this section, and (after consultation with any other trustees of the sub-trust funds) to report to the Congress each year on the financial condition and the results of the operations of the Superfund and each such sub-trust fund during the preceding fiscal year and on its expected condition and operations during the next 3 fiscal years. Such report shall be printed as a House document of the session of the Congress to which the report is made.

(2) TRUSTEES. The Secretary of the Treasury shall be the Managing Trustee of the Superfund and each such sub-trust fund established under this Act. Each sub-trust fund that contains other sub-trust fund accounts shall have the main beneficiary of the controlling sub-trust fund designated as a co-Trustee along with the Secretary of the Treasury for the management of the individual sub-trust fund accounts thereunder.

(3) INVESTMENT.

(A) IN GENERAL. It shall be the duty of the Secretary of the Treasury to invest such portions of the Superfund or any sub-trust fund established by this Act as is not, in his judgment, required to meet current withdrawals. Such investments may be made only in interest-bearing obligations of the United States. For such purpose, such obligations may be acquired-

(i) in original issue at the issue price, or

(ii) by purchase of outstanding obligations at the market price.

(B) SALE OF OBLIGATIONS. Any obligation acquired by the Superfund or a sub-trust fund established by this Act may be sold by the Secretary of the Treasury at the market price.

(C) INTEREST ON CERTAIN PROCEEDS. The interest on, and the proceeds from the sale or redemption of, any obligations held in the Superfund or any sub-trust fund established by this Act shall be credited to and form a part of the Superfund or related sub-trust fund.

EXHIBIT - G

>(i) The amounts appropriated by this Act to the Superfund or any sub-trust fund established by this Act shall be transferred at the request of the beneficiaries to the trustees at least monthly from the Superfund to such sub-trust fund on the basis of estimates made by the Secretary of the Treasury of the amounts referred to in such section. Proper adjustments shall be made in the amounts subsequently transferred to the extent prior estimates were in excess of or less than the amounts required to be transferred.

(j) LIMITATIONS ON USE OF FUNDS. The Superfund and any individual sub-trust fund or account established by this Act, and the appropriations in said funds, are hereby prohibited from being used to influence any legislation and shall not be made directly available for campaign financing or personal use by any United States Senator or Member of the United States House of Representatives; nor any officer, employee, or agent of any federal agency in the Executive Branch; nor any Judicial Officer or Clerk of any federal court of the United States within the Judicial Branch.

>(1) None of the activities of the Superfund or sub-trust fund or account established by this Act shall be conducted in a manner inconsistent with any law that prohibits attempting to influence legislation.
>
>(2) The Superfund or any such sub-trust fund or account established by this Act may not participate in or intervene in any political campaign on behalf of (or in opposition to) any candidate for public office, including by publication or distribution of statements.

(k) UNCLAIMED MONEYS. On September 30 of each year, the Secretary of the Treasury shall transfer to the Treasury trust fund receipt account "Unclaimed Moneys of Individuals Whose Whereabouts are Unknown" that part of the balance of a sub-trust fund or account established by this Act that has been in the fund for more than one year and represents money belonging to individuals whose whereabouts are unknown. Subsequent claims to the transferred funds shall be paid from the account "Unclaimed Moneys of Individuals Whose Whereabouts are Unknown".

(l) CLOSING OF ACCOUNTS. Any sub-trust fund or account established by this Act that is available for an indefinite period shall be closed, and any remaining balance (whether obligated or unobligated) in that account shall be canceled and thereafter shall not be available for obligation or expenditure for any purpose, if-

>(1) no disbursement has been made against the appropriation for two consecutive fiscal years.

(m) REGULATIONS. Not later than 90 days after the date of enactment of this Act, the Secretary of the Treasury shall prescribe regulations to carry out this section.

### SECTION 7. TAX RELIEF.

(a) The parties, beneficiaries, and their immediate family members, are permanently exempt from all federal, state, and local taxes for the rest of their natural lifespan. Provided that, Joey Brandon Kemp shall not be exempted from any federal, state, or local taxes.

(b) The corporate beneficiaries named in this Act are exempt from federal income tax for a period of three consecutive years from the effective date of the enactment of this Act. *Provided that,-*

- (1) the Bradley Christopher Stark Justice Relief Fund,
- (2) the Shawn Michael Rideout Justice Relief Fund, and
- (3) the Bryan Samuel Coffman Justice Relief Fund

shall recover a total amount of ten percentum of the projected federal income tax liability benefits under this subsection attributable to the corporate beneficiaries named in this Act, to be divided coequally among the sub-trust funds listed in this subsection during the three consecutive year time period this subsection remains in effect. Such amounts shall be due by no later than April 15 of the taxable year immediately following the effective date of the enactment of this Act and shall be deposited in the Superfund at the United States Treasury established by this Act as an appropriation for further credit to the sub-trust funds named in this subsection.

### SECTION 8. REMEDIES.

(a) Any party or beneficiary entitled to and granted immunity by this Act, having been found guilty, by clear and convincing evidence, to have committed a Class A felony offense as defined under title 18 of the United States Code, shall be subject to permanent removal from the United States of America, its territories, and possessions, and such guilty party or beneficiary shall have their citizenship permanently revoked.

(b) Nothing in this section shall be construed to authorize any accused party or beneficiary entitled to or granted immunity by this Act to be placed in the custody of any law enforcement officer for the purpose of confinement in any jail, prison, or other form of official or unofficial detention.

(c) The Supreme Court of the United States shall have original jurisdiction pursuant to Article III, section 2, clause 2 of the Constitution, to conduct a criminal trial or other appropriate proceedings of any party or beneficiary entitled to or granted immunity by this Act, to determine the guilt or innocence of such party or beneficiary in accordance with subsection (a) of this section. Any trial or proceedings shall be conducted in the Supreme Court of the United States, and any orders or judgments entered thereon, *in absentia* if the accused party or beneficiary shall be found to have fled the jurisdiction of the Supreme Court.

(d) The Federal Rules of Evidence along with the appropriate Federal Rules of Criminal Procedure shall be used in the conduct of any trial and proceedings in the Supreme Court in accordance with subsection (a) of this section. The Supreme Court may, in its discretion, apply any rules of the Federal Rules of Civil Procedure it deems necessary to the conduct of proceedings under this section.

(e) Alternative dispute resolution procedures are not authorized to be used to conduct any proceedings under this section.

(f)   A judgment of the Supreme Court finding that any party or beneficiary entitled to or granted immunity by this Act, that is guilty of committing a Class A felony offense as defined in title 18 of the United States Code, shall sentence the party or beneficiary to the sole and exclusive punishment established by this section, and shall in no way terminate any other affirmative, prohibitive, or monetary relief established by this Act, nor any other right or privilege established by the Constitution, any laws, or treaties of the United States.

### SECTION 9. ENFORCEMENT.

(a) The Congress shall have power to enforce the provisions of this Act by appropriate legislation.

### SECTION 10. EFFECTIVE DATE.

(a) This Act shall take effect sixty days after enactment.

EXHIBIT - G

Mac Thornberry

*Speaker of the House of Representatives pro tempore.*

John Cornyn

*Acting President of the Senate pro tempore.*

EXHIBIT - G

IN THE SENATE OF THE UNITED STATES,

*September 28, 2016.*

The Senate having proceeded to reconsider the bill (S. 112) entitled "An Act for the Relief of Bradley Christopher Stark, Shawn Michael Rideout, and Certain Named Beneficiaries", returned by the President of the United States with his objections, to the Senate, in which it originated, and passed by the Senate on reconsideration of the same, it was

*Resolved,* That the said bill pass, two-thirds of the Senators present having voted in the affirmative.

Julie E. Adams

*Secretary*

I certify that this Act originated in Senate.

Julie E. Adams

*Secretary*

EXHIBIT - G

IN THE HOUSE OF REPRESENTATIVES, U.S.

*September 28, 2016*

The House of Representatives having proceeded to reconsider the bill (S. 112) entitled "An Act for the Relief of Bradley Christopher Stark, Shawn Michael Rideout, and Certain Named Beneficiaries.", returned by the President of the United States with his objections, to the Senate, in which it originated, and passed by the Senate on reconsideration of the same, it was

*Resolved,* That the said bill do pass, two-thirds of the House of Representatives agreeing to pass the same.

Karen L. Haas

*Clerk.*

LEGISLATIVE HISTORY—S. 112

CONGRESSIONAL RECORD, Vol. 162 (2016)
    Aug. 17, considered and passed Senate.
    Sept. 9, considered and passed House.
DAILY COMPILATION OF PRESIDENTIAL DOCUMENTS (2016)
    Sept. 9, Presidential veto message.
CONGRESSIONAL RECORD, Vol. 162 (2016)
    Sept. 28, Senate and House overrode veto.
CONGRESSIONAL RECORD, Vol. 162 (2016)
    Oct. 18, amended and re-introduced in the Senate.
    Nov. 17, considered and passed Senate.
    Nov. 22, considered and passed House.
DAILY COMPILATION OF PRESIDENTIAL DOCUMENTS (2016)
    Dec. 3, Presidential signature message.